UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Brianna N. D.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:18-CV-302-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff, Brianna N. D. ("Ms. D.") seeks judicial review of the Social Security Commissioner's decision denying her applications, dated June 11 and 30, 2015, for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act respectively. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

I. **OVERVIEW OF THE CASE**

Ms. D. was 21 years old on August 13, 2013, the date she alleges she became disabled as the result of an injury to her left knee, history of a stroke (age two), bradycardia, left upper extremity numbness, and asthma. Following her alleged onset

---
[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

date, Ms. D. worked as a hydrostatic tester, a job she performed at semi-skilled medium exertion, from June 2016 through February 2017, which was substantial gainful activity. Ms. D. fell on a wet floor at Dollar General in August 2013, causing her chronic left knee pain. Ms. D. also complained of lower back pain and bilateral foot pain.

On December 27, 2017, an administrative law judge ("ALJ") found Ms. D. not to be disabled as defined by the Social Security Act ("Act") and denied her requested DIB and SSI. On July 27, 2018, the Appeals Council denied Ms. D.'s timely request for review, making the ALJ's December 2017 decision the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Now ripe[2] before this Court is Ms. D.'s complaint for judicial review of the Commissioner's unfavorable decision under 42 U.S.C. § 405(g).

## II. DISABILITY STANDARD

In order to qualify for DIB or SSI, a claimant must be "disabled" under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe;

---

[2] Plaintiff's complaint became ripe on August 12, 2019, without any reply brief being filed. *See* N.D. Ind. L.R. 7-3(d).

2

(3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her residual functional capacity ("RFC"); and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. §§ 404.1520; 416.920; *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if

it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th. Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

4

**IV. ANALYSIS**

Ms. D. challenges the ALJ's RFC determination alleging errors of law and lack of the necessary logical bridge from the evidence to the RFC. The ALJ defined Ms. D.'s RFC as being capable of performing medium work

> except as reduced by the following. Additional limitations include no more than climbing of ramps and stairs, no more than frequent balancing, stooping and crouching with occasional crawling and kneeling and no climbing of ladders, ropes or scaffolds, no working upon slippery or uneven surfaces and no work at unprotected heights or around dangerous machinery.

[DE 10 at 20].

A claimant's RFC is the most activity in which she can engage in a work setting despite the physical and mental limitations that arise from her severe and non-severe impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). In crafting an RFC, the ALJ must consider "all of the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1545(a)(3); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

Here, Ms. D. specifically alleges that the ALJ's RFC, and consequently his hypothetical to the vocational expert at the hearing, were flawed because he improperly weighed medical opinion evidence and improperly played doctor with regards to side effects from pain medication. Similarly, Ms. D. argues that the ALJ improperly discounted her subjective symptom allegations by relying on her daily activities. Ms. D. also contends that the ALJ failed to properly assess her work record. Finally, Ms. D. alleges that the ALJ failed to properly account for her non-severe impairments and the

5

limitations they impose and consider them in combination with her severe impairments. Based on these shortcomings, Ms. D. asks the Court to remand the ALJ's decision.

### A. Medical Opinion Evidence

Ms. D first argues the ALJ improperly weighed the opinion of treating physician Dr. Miller by "mischaracterizing it and the facts associated with it." [DE 17 at 12]. Dr. Miller opined that Ms. D. would be able to perform any of her job functions despite her condition. [DE 10 at 1014]. He stated that she may experience low back pain, but she would not be incapacitated for a continuous time due to her condition. He did request she be limited to 6 hours per day; 5 days per week for an unknown period of time due to her back pain. However, he opined that flare-ups would not prevent her from performing job functions or cause her to be absent from work. [DE 10 at 1015]. Dr. Miller also opined that standing/turning might limit her performance, but that allowing Ms. D. to sit/stand when needed would enable her to continue working. [DE 10 at 1016-17].

The ALJ gave this opinion "little weight", finding it unsupported by the "longstanding mild lumbar imaging results" and the fact that Ms. D. had only one further appointment with Dr. Miller three months after the opinion. [DE 10 at 27]. Ms. D. alleges that the ALJ ignored Dr. Miller's diagnosis of intervertebral disc degeneration and failed to acknowledge the fact that he prescribed Gabapentin. Ms. D. also takes issue with the ALJ's failure to consider Dr. Miller's longstanding treatment of Ms. D. However, the ALJ addressed these issues. The ALJ discussed Ms. D.'s many

6

medications, but he noted that she testified she does not take her medications regularly. [DE 10 at 21-22, 25-26]. The ALJ also discussed specific portions of the medical evidence that contradicted Dr. Miller's opinion. For instance, a treatment note from Dr. Miller three months after the opinion show no complaints of back pain with no tenderness, no scoliosis, and no CVA tenderness. [DE 10 at 995-96, 1062-63]. The ALJ supported his decision to give Dr. Miller's opinion little weight with substantial evidence. Furthermore, Ms. D. mischaracterizes the ALJ's decision when she alleges that "the ALJ opinion attempts to twist the FMLA paperwork to reliably indicate a lack of flareups when in fact Dr. Miller simply explicitly indicates that the regularity of flareups is unknown." [DE 18 at 17]. The ALJ, in discussing the opinion, found that "the condition does not cause episodic flare-ups periodically preventing the claimant from performing her job functions," [DE 10 at 21], which is language pulled direction from Dr. Miller's opinion. [DE 10 at 1015]. The ALJ did not mischaracterize evidence when he directly quoted the language from Dr. Miller's opinion.

The ALJ gave Dr. Miller's opinion little weight, despite the length of his treating relationship with Ms. D. While the ALJ did not discuss the length of treatment in his discussion, he gave great weight to the opinion of Dr. Connor, Ms. D.'s treating orthopedist. [DE 10 at 27]. Dr. Connor treated Ms. D. for the same length of time as Dr. Miller. [DE 10 at 891]. The ALJ properly supported his decision with evidence from the record, citing to specific records and portions of testimony to support his decision to give Dr. Miller's opinion little weight.

7

### B. Medication Side Effects

Ms. D. alleges that the ALJ played doctor in finding that Ms. D.'s failure to take her medications "does not appear to suggest a pressing or significant clinical need for such medications to address daily level 10 out of 10 pain." [DE 10 at 22]. Specifically, Ms. D. takes issue with the ALJ's finding that the lack of narcotic or opioid prescription discounts Ms. D.'s allegations of severe pain. The ALJ spends an entire paragraph discussing Ms. D.'s medication regime and potential side effects, supporting his decision with substantial evidence in the record. [DE 10 at 22]. For instance, the ALJ discussed that she does not take any of her prescribed pain medication or muscle relaxers during a typical day due to feeling "zombified." [DE 10 at 22]. Moreover, while Ms. D. testified the need for three or four pain killers to relieve her pain, the ALJ noted that she was only prescribed non-steroidal anti-inflammatory and muscle relaxants, which as described above, she rarely took. [DE 10 at 21-22]. While Ms. D. argues that the ALJ should have consulted with a pain management specialist to analyze the effectiveness of a pain medication regimen, she fails to offer any case law to support her assertion. The ALJ supported his claim with substantial evidence and properly looked at Ms. D.'s failure to take pain medication in assessing her subjective symptoms.

Ms. D. also asserts that the ALJ's analysis of her medication regime "rests upon the <u>faulty basis</u> that unless one is taking high dosages of powerful opioids or narcotics, one's pain must not be severe enough to be work preclusive." [DE 17 at 20]. However, this is not the inference the ALJ made. Instead, the ALJ stated that Ms. D.'s failure to regularly take medication does not appear to support the need for medication to

address her supposed daily level 10 out of 10 pain. [DE 17 at 22]. The ALJ properly supported this assertion by noting that Ms. D. does not follow her conservative prescribed medication regime. [DE 10 at 22].

The ALJ also properly addressed Ms. D.'s purported side effects. Although Ms. D. testified that her medication makes her tired and make her feel "zombified," the ALJ notes that the medical record shows no record of any such complaints to her treating physician. [DE 10 at 22]. Moreover, Ms. D. specifically denied any issues with sleep disturbance or any side effects during her regular medication reviews and reviews of symptoms. [De 10 at 22, 994-1047]. *See Binion v. Shalala,* 13 F.3d 243, 248 (7th Cir. 1994) ("The ALJ noted that the medical evidence did not demonstrate any side effects from the medications."). The ALJ properly considered Ms. D.'s conservative treatment plan, her failure to use the medication prescribed to her, and the lack of documentation of side effects in the treatment notes to discredit her allegations of daily 10 out of 10 pain.

### C. Work Record

The ALJ noted that Ms. D. returned to work in a semi-skilled, medium-exertion job after her alleged onset date of disability, which would undermine her claims of total disability. [DE 10 at 24-25]. The ability to return to work after an alleged onset date may be used to undermine a claimant's subjective symptoms. *See Castile v. Astrue,* 617 F.3d 923, 927-28 (7th Cir. 2010) (finding a claimant's ability to work after the alleged onset date contradicted her claim that it was impossible for her to work at all). Although Ms. D. stopped working at that job due to restrictions put in place by her treating physician, the ALJ still properly noted that she was capable of working a job at a medium exertion

level for seven months after her alleged onset date. [DE 10 at 20]. The ALJ discussed Ms. D.'s decision to become a stay-at-home mom from 2014 through 2015, as well as the fact that she has continued to be the sole caretaker of her four-year-old since 2017. [DE 10 at 26]. Ms. D.'s decision to stop working from 2014 through 2015 did not correlate to any impairments, but rather her desire to be a stay-at-home mom. The ALJ properly considered Ms. D.'s work activity after her alleged onset date as well as her reasons for not working, in evaluating her subjective complaints.

### D. Subjective Symptoms

In his RFC analysis, the ALJ provided a four page discussion contrasting Ms. D's subjective symptom allegations with the objective medical evidence and Ms. D.'s own inconsistent testimony. [DE 10 at 21-26]. Ms. D. argues that the ALJ erred in his treatment of Ms. D.'s daily activities in his analysis. While it is proper to consider a claimant's daily activities in analyzing subjective symptoms, the Seventh Circuit has "urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member." *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *citing Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). Ms. D. asserts that the ALJ failed to recognize the differences between completing daily activities on a flexible schedule with help and completing activities on the job in a timely manner without assistance.

However, the ALJ did not improperly equate Ms. D.'s daily activities to an ability to work full time. Instead, the ALJ carefully contrasted Ms. D.'s subjective complaints

with her inconsistent testimony, daily activities, and the medical record. [De 10 at 21-26]. The ALJ properly built a logical bridge between the medical record and his conclusion that Ms. D.'s allegations of daily 10/10 pain were not supported by the record. The ALJ did not suggest that Ms. D. was capable of full time work based solely on her ability to complete certain daily activities. Instead, the ALJ properly used Ms. D.'s daily activities to analyze her subjective symptoms and contrast them with the evidence in the medical record. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) ("[T]he ALJ considered Loveless's description of his daily activities in assessing whether his testimony about the effects of his impairments was credible or exaggerated.")

### D. Non-severe Impairments in Combination

An ALJ must consider all of a claimant's impairments singly and in combination to determine whether the claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1523, 416.923. Although a claimant bears the burden of demonstrating disability, "it is a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan,* 933 F.2d 581, 585 (7th Cir. 1991) (*quoting Smith v. Sec'y of HEW,* 587 F.2d 857, 860 (7th Cir. 1978)).

Ms. D. argues that the ALJ failed to account for a variety of non-severe impairments and limitations, including her nausea, mental impairments, sciatica, reaching limitations, a "permanent knee impairment," and obesity. [DE 17 at 23-25]. As to the sciatica, Dr. Miller listed "low back pain/sciatica" in his opinion paperwork for FMLA. [DE 10 at 1017]. However, Ms. D. has failed to point to any additional

11

limitations not in the RFC required for her low back pain. Moreover, a physical therapy note from a month after Dr. Miller's opinion notes that Ms. D. was "without sciatica," [DE 10 at 890], and sciatica is not mentioned consistently in the treatment notes. The ALJ discussed Ms. D.'s low back pain in detail, but he found that her complaints were not consistent with the evidence. To support his decision, the ALJ cited to her failure to take medication during the day, her ability to care for her son, her ability to hold a medium exertion-level job for several months after her alleged onset date, her full strength in her arms and legs, her ability to walk normally, and her only minimally reduced range of motion in her back. [DE 10 at 21-26]. The ALJ limited Ms. D. to medium work with further restrictions and limited postural movements. [DE 10 at 20]. Ms. D. does not allege any further limitations required by her low back pain. The ALJ properly considered Ms. D.'s low back pain in the RFC decision, and Ms. D. has failed to show the need for further limitations to accommodate her back pain.

Similarly, Ms. D. argues that the ALJ failed to consider her "somatic dysfunction of sacral region," [DE 17 at 23], yet fails to identify any functional limitations required by the impairment. As already discussed, the ALJ fully discussed and analyzed Ms. D.'s low back pain. Ms. D. has not pointed to any further limitations required by her multiple back impairments.

As for her knee impairment, Ms. D. argues that the ALJ failed to grant any weight to Dr. Connor's opinion as to a "permanent knee impairment." [DE 17 at 24]. However, the ALJ not only fully discussed his reasoning for finding Ms. D.'s knee impairment to be non-severe, but he gave great weight to Dr. Conner's opinion from

2015 that found Ms. D. had a whole body impairment of only 3%. [DE 10 at 27, 1190]. Dr. Connor also failed to identify any standing or walking restrictions for the ALJ to rely on. Ms. D. has not provided any evidence that her knee impairment was a severe impairment, and the ALJ properly supported his decision finding that her knee impairment was non-severe. Similarly, Ms. D. fails to point to any evidence in the record regarding her reaching limitations with her left arm that would require limitations in the RFC. The ALJ need not discuss every piece of evidence presented, but rather he must provide an accurate and logical bridge between the evidence and his conclusion. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ did so here.

Ms. D. also argues that the ALJ failed to account for her nausea following her gallbladder removal. [DE 17 at 23]. However, the ALJ fully discussed Ms. D.'s alleged nausea and her purported need for Zofran. The ALJ found that Ms. D. failed to take her Zofran and did not have a prescription for Zofran outside of a recent ER visit. [DE 10 at 23]. At the hearing, Ms. D. admitted she had not taken Zofran prior to the ER visit just a few weeks prior to the hearing, and she admitted that she did not suffer from nausea if she was careful about what she ate. [DE 10 at 23]. The ALJ then properly found that Ms. D. did not require Zofran in order to eat, and her nausea was not a disabling condition.

Finally, Ms. D. argues that the ALJ failed to consider her obesity in combination with her knee and back impairments. "[A]n ALJ should consider the effects of obesity together with the underlying impairments, even if the individual does not claim obesity as an impairment." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). Failure to account for a claimant's obesity, however, does not require remand if the claimant fails

to explain how her obesity exacerbates her impairments or somehow contributes to her inability to work a full time job. *Capman v. Colvin*, 617 Fed. Appx. 575, 580-81, 2015 U.S. App. LEXIS 11268, *14 (7th Cir. 2015); *Mueller v. Colvin*, 524 Fed. Appx. 282, 286 (7th Cir. 2013). "This is particularly true when the claimant's weight is not discussed in any detail in the medical record." *Crawford v. Colvin,* 2015 U.S. Dist. LEXIS 102679, *26-27 (N.D. Ill., August 5, 2015); *citing Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015). Ms. D. has not explained how her obesity impacts her ability to work. She makes speculative claims about how her obesity *might* impact her lower back pain or her knee impairments, but she fails to make any assertions as to how her obesity actually impacts those impairments or causes any functional limitations. Moreover, as in *Stepp*, the record does not indicate that Ms. D.'s treating physicians discussed her weight in any detail or counseled her on her obesity. There are only two mentions in the medical record from 2016, and neither mentions provide any discussion regarding the obesity. [DE 10 at 1004, 1006]. As a result, any error in failing to discuss Ms. D.'s obesity was harmless. *Stepp*, 795 F.3d at 720.

V. **CONCLUSION**

For the reasons stated above, the ALJ's determination is supported by substantial evidence and does not warrant remand. Accordingly, the Commissioner's decision is **AFFIRMED**. The Clerk is instructed to enter judgment in favor of the Commissioner.

**SO ORDERED** this 12th day of December 2019.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge